UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHERINE E. MINAHAN

        Plaintiff

vs.

DATAWATCH CORPORATION

        Defendant.

Civil Action No. 14-12992-DJC

# FIRST AMENDED COMPLAINT
# AND JURY TRIAL DEMAND

## INTRODUCTION

Plaintiff KATHERINE E. MINAHAN brings this action against Defendant DATAWATCH CORPORATION arising from Plaintiff's employment with Defendant and its failure to pay Plaintiff's overtime wages. Plaintiff seeks her unpaid wages and mandatory treble damages for Defendant's egregious violations of the law.

## PARTIES

1. The Plaintiff Katherine E. Minahan (hereinafter "Plaintiff") is an individual who resides at 35B Lund Drive, Hudson, New Hampshire 03051.

2. Defendant, Datawatch Corporation (hereinafter "Defendant" "Datawatch" or "Company") is the Plaintiff's employer who is incorporated under Delaware law and has a principal place of business at 271 Mill Road, Chelmsford, Middlesex County, Massachusetts 01824.

## STATEMENT OF FACTS

3. Plaintiff was hired by Defendant 15 years ago at the age of 47 as an Accounts Receivable Manager and Plaintiff has maintained the same position and responsibilities throughout her time with the Company.

4. Plaintiff is an employee compensated at $58,000 per annum at the time of the filing of this Complaint.

5. Defendant is an international corporation that conducts business in all 50 States and in several different countries throughout the world. In addition to its principal place of business in Chelmsford, Massachusetts, Defendant has an office in New York City and many other cities worldwide.

6. Defendant is involved in interstate commerce as it offers its products and services and provides visual data discovery software to global companies throughout the United States.

7. Defendant is an extremely profitable business and employs over 190 employees. The services of Defendant are provided to its customers throughout the United States and the world. The gross volume of sales and/or business done by Defendant well exceeds $500,000 per year.

8. Throughout her employment with Defendant, Plaintiff was supervised by the Accounting Manager or Company Controller. Plaintiff has supervised no employees over the last eight years and had no meaningful managerial responsibilities. Plaintiff did not have responsibility or authority over any other employees within Datawatch and did not have any authority or input in decisions regarding other employees within Datawatch.

9. Plaintiff's responsibilities at Datawatch consisted of general accounts receivable duties with no additional obligations. Plaintiff would follow all Datawatch protocols and procedures in completing her tasks and had her work supervised by several managers or other employees with authority over Plaintiff. The work and assignments Plaintiff received on a weekly basis did not vary and she completed the same or similar assignments throughout her employment.

10. Plaintiff had no education or other specific training for her job at Datawatch other than any training that was provided by Datawatch itself.

11. Plaintiff's mandated schedule was 37 ½ hours per week. Despite this schedule, Plaintiff was often required to work hours exceeding well over 40 hours per week.  Frequently, Plaintiff's work week consisted of her working 45 to 60 hours and even as much as 70 hours. These long days often required Plaintiff to come in early, leave late, and skip lunch. To this day, Plaintiff has never been compensated for any work over 37 ½ hours per week.

12. In approximately August or September 2013, Defendant bought a company by the name of Panopticon. At this time, Plaintiff's work days increased in length even more to meet deadlines, and, in addition to coming in early, leaving late, and skipping lunch, she was required to work on weekends, holidays, work from home, and work during days she was on vacation. Plaintiff was never compensated more than her salary based on 37 ½ hours per week. Plaintiff complained to Defendant that she was not being properly

compensated for the extra hours she worked.

13. Plaintiff was told on December 13, 2013 by her direct supervisor, Jessica Okerman ("Ms. Okerman"), that Plaintiff would not be there for long.  Ms. Okerman said that Plaintiff should no longer bother working her extremely long hours in an effort to retain her employment as "it won't make any difference." Plaintiff complained once again that she had never been paid for any of the overtime hours she worked.

14. After the Defendant's merger/takeover of Panopticon, Kerrie Norton, a much younger employee, was hired and took over some of Plaintiff's responsibilities. Plaintiff feared younger, lesser paid individuals would continue to be hired to take over her job duties and replace her.

15. Beginning in 2014, an unpaid intern in his twenties began training on several of Plaintiff's duties and, it appears that, Defendant is preparing to hire him to take over Plaintiff's position.

16. In April of 2014, Defendant told Plaintiff her job "no longer existed" and she would be assigned new duties. Defendant informed Plaintiff that she would have no transition time for her new position and would not be trained, despite her changing positions after fifteen years. Plaintiff was further advised by the Accounting Manager that if she failed at her new position, she would be disciplined.

17. After Plaintiff was informed of her job "not existing" anymore, on or around April 25, 2014 she was called in for a meeting with her supervisor, the Accounting Manager, to discuss her transfer to her new position.

18. At this meeting, Plaintiff complained to her supervisor that transferring her to a new position was just a pretext to force her out by giving her a job she did not know how to do.  She expressed her belief that there was a cover up of the real reason for forcing her out; her age and her level of salary as it had been increased several times over her 15 years of employment.  Plaintiff pointed out once again that she had been working 45-60 and as much as 70 hours per week, had not been compensated for overtime, and was not a salaried exempt management employee.

19. At a subsequent meeting on or around April 30, 2014, Plaintiff met with both The Controller and Accounting Manager to discuss the position. Plaintiff expressed willingness to take on the new position, but again brought up her complaints that she was not being compensated for the amount of work she did, was not an employee exempt from receiving overtime, and that she was being forced into leaving. The Controller reacted angrily to what Plaintiff said and ordered her to a meeting with Human Resources following the April 30, 2014 meeting (hereinafter "HR Meeting"). The HR Meeting took place on May 5, 2014.

20. Plaintiff expressed the same sentiments at the HR meeting that she felt she was being forced out because she was 62 years old and for asking to be compensated for overtime. Plaintiff stated her willingness to part or stay on as a consultant if an agreement between the Plaintiff and Defendant regarding wages could be reached.

21. A Human Resources Manager, with the Accountant Manager present, told Plaintiff to make sure she did not tell any potential employers her age as "she looks great for her age."

22. Instead of attempting to keep Plaintiff on as a consultant or attempting to train her in the proper manner, Defendant sent a Separation Letter to Plaintiff regarding ending her employment with Defendant on May 9, 2014.

23. If Defendant signed this Separation Letter, her employment would have ended at the Company on May 30, 2014. This offer would compensate Plaintiff for 17 weeks for severance pay, but did not compensate her for any unpaid overtime wages.

## COUNT I
## NON-PAYMENT OF WAGES IN VIOLATION OF M.G.L. c. 149 et seq. and M.G.L. c. 151 et seq.

24. Plaintiff hereby realleges an incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

25. At all times relevant to this Complaint, the Defendant was an "employer" of Plaintiff within the meaning of the Massachusetts Wage Act (M.G.L. c. 149 and 151).

26. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the Massachusetts Wage Act.

27. Plaintiff, an employee of Defendant regularly worked in excess of forty hours per week, entitling her to overtime wages.

28. Defendant failed to pay Plaintiff the full amount of her earned overtime wages when the same became due and payable in violation of the Weekly Payment of Wages Act, M.G.L. c. 149 and 151.

29. Plaintiff is not an employee that is exempt from receiving overtime pay for hours worked in excess of 40 in one week.

30. On June 9, 2014, Plaintiff received written permission from the Massachusetts Attorney General to file a wage claim pursuant to M.G.L. c. 149 § 150. See, Letter from Attorney General, attached hereto as Exhibit 1 and incorporated herein by reference.

31. As a result of Defendant's failure to comply with M.G.L. c. 149 § 148 Plaintiff is entitled to recover treble damages, interest, reasonable attorney's fees, and costs.

## COUNT II
## BREACH OF CONTRACT

32. Plaintiff hereby realleges and incorporates the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

33. Plaintiff and Defendant were parties to a contract under which Defendant had a duty to pay Plaintiff's earned overtime wages. As further described aforesaid, Plaintiff regularly worked overtime hours and is entitled to overtime compensation.

34. Defendant breached this contractual duty by failing to pay the wages owed under the contract.

35. Defendant's breach was material in failing to pay earned overtime wages.

36. As a result Defendant's material breach, Plaintiff suffered damages.

37. Defendant's material breach was the proximate and actual cause of Plaintiff's damages.

38. Defendant's material breach of contract entitles Plaintiff to recover contract damages, including but not limited to, incidental and consequential damages, and pre-judgment interest from the date of breach.

## COUNT III
## UNJUST ENRICHMENT

39. Plaintiff hereby realleges and incorporates the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

40. Defendant received the benefit of Plaintiff's time, work, and professional skill without compensating her for overtime wages to which she is entitled.

41. Defendant was unjustly enriched by the amount of the unpaid overtime wages not paid to Plaintiff as well as any profits Defendant made as a result of Plaintiff's work.

42. Defendant benefitted from its failure to pay Plaintiff the subject wages and, as a result, Plaintiff suffered damages.

## COUNT IV
## RETALIATION UNDER MASSACHUSETTS WAGE ACT
## IN VIOLATION OF M.G.L. c. 149 § 148A

43. Plaintiff hereby realleges and incorporates the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

44. Plaintiff engaged in protected activity under the Payment of Wages Act when she complained to the Defendant about its refusal to pay her the full amount of compensation owed to her.

45. In response to Plaintiff's protected activity as fully described herein, Defendant unlawfully penalized Plaintiff for engaging in said activity, in violation of M.G.L. c. 149 § 148A.

46. As a result of Defendant's actions, Plaintiff has suffered damages.

## COUNT V
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## (29 U.S.C. § 201 et seq.)

47. Plaintiff hereby realleges and incorporates the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

48. At all times relevant to this Complaint, Defendant has been and continues to be, an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

49. At all times relevant to this Complaint, Defendant has "employed" Plaintiff within the meaning of the FLSA (29 U.S.C. § 203(g)).

50. Pursuant to the Fair Labor Standards Act ("FLSA"), the Defendant is an enterprise engaged in commerce or the production of goods for commerce that had annual gross sales of at least $500,000.

51. Under the FLSA, Plaintiff was entitled to overtime compensation for all hours worked in excess of forty (40) hours per week at a rate of at least one-and-a-half times her regular rate of pay.

52. Defendants have failed to compensate Plaintiff at a rate of at least one-and-a-half times her regular rate of pay for work performed in excess of forty (40) hours per week.

53. Plaintiff is not an employee that is exempt from receiving overtime pay for hours worked in excess of 40 in one week.

54. As a result of the conduct described above, Defendants have violated the FLSA.

55. As a result of the conduct described above, Defendants have violated the FLSA wilfully.

56. As a result of Defendant's conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Katherine E. Minahan respectfully requests that this Honorable Court grant the following relief:

1. Judgment in favor of the Plaintiff on all counts of this Complaint;

2. Treble damages for unpaid overtime wages as well as interest, the costs of litigation, and reasonable attorney fees;

3. All legally cognizable damages for Defendant's breach of contract, plus interest from the date of the Defendant's breach;

4. Equitable damages for Defendant's unjust enrichment;

5. Damages for Defendant's retaliation; and

6. Such other relief as the Court deems just and proper.

## JURY DEMAND

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff

KATHERINE E. MINAHAN**,**

By her attorneys,


/s/ Michael W. Ford
_____
Michael W. Ford
BBO# 644807
FORD LAW P.C.
1216 Bennington Street
East Boston, MA 02128
Tel/Fax: 617-328-3400
mford@fordlawpc.com

/s/ Robert K. Kelly

---

Robert K. Kelly
BBO# 267100
KELLY LAW OFFICE
21 Franklin Street – Third Floor
Quincy, MA 02169
617-479-8133
rkkesq@aol.com

/s/ Seth D. Klotz

---

Seth D. Klotz
BBO# 672692
21 Franklin Street – Third Floor
Quincy, MA 02169
617-479-8133
sethdklotz@aol.com

CERTIFICATE OF SERVICE

A copy of this First Amended Complaint was served upon Matthew Porter, Esq. on this date via electronic mail.

Dated: July 15, 2014         By:    /s/ Seth Klotz
                                    Seth Klotz, Esq. (BBO # 672692)